*E-Filed: July 10, 2015*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF DVBE TRUCKING AND CONSTRUCTION COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MCCARTHY BUILDING COMPANIES, INC., et al.,<br><br>Defendants. | Case No.  13-cv-03699-HRL<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS**<br><br>Re: Dkt. No. 32 |

The United States of America, for the use and benefit of DVBE Trucking and Construction Company, Inc. sues McCarthy Building Companies, Inc., Federal Insurance Company, and Travelers Casualty and Surety for recovery on Miller Act Payment on bond, 40 U.S.C. § 3133, and related claims.  Presently before the Court is Defendants' motion for stay of proceedings.  All parties have expressly consented to having all matters proceed before a magistrate judge.  The motion is deemed suitable for determination without oral argument.  The July 14, 2015 hearing is vacated.  Civ. L.R. 7-1(b).  Based on the moving and responding papers, the Court denies the motion.

**BACKGROUND**

Defendant McCarthy Building Companies, Inc. contracted with the Department of Veterans Affairs ("VA") to construct an 80-bed psychiatric facility in Palo Alto.  In June 2009,

McCarthy subcontracted with Plaintiff DVBE Trucking Construction Co. pursuant to which DVBE would perform certain grading, paving, and excavation of land on the project. Defendants Federal Insurance Company and Traveler's Casualty and Surety provided to McCarthy the performance and payment bonds mandated by the Miller Act, 40 U.S.C. §§ 3131-3133.

During the project, the VA issued a notice of suspension of work. Neither McCarthy nor DVBE were able to begin work as originally planned, and the work was also delayed due to differing site conditions relating to the underground utilities and additional stem wall work. As a result, both McCarthy's and DVBE's work was performed behind schedule, during the winter. Once performed, this work was impacted by adverse weather. McCarthy was required to perform additional and unforeseen work. Activities were also re-sequenced and other adjustments to planned performance had to be made in response to working during winter.

McCarthy, on behalf of itself and its subcontractors (including DVBE), submitted claims to the VA for additional compensation. McCarthy and the VA negotiated the claims for two years and they reached a tentative agreement. However, the VA refused to finalize the agreement.

The Contract Disputes Act is the dispute resolution process governing disputes between the VA and McCarthy. McCarthy submitted four requests for a contracting officer's final decision on several of its claims. The first request was "deemed denied" because the contracting officer failed to timely respond to the claim. McCarthy filed an appeal with the Civilian Board of Contracting Appeals ("CBOCA"). The contracting officer has not responded to the remaining three claims. If those claims are denied, McCarthy plans to file appeals for those claims as well. All of DVBE's claims will be presented in the current appeal pending before the CBOCA. The CBOCA will issue a binding decision on McCarthy's claims, including DVBE's claim.

In August 2013, the United States for the use and benefit of DVBE sued McCarthy, Federal Insurance Company, and Travelers Casualty & Surety for: (1) recovery on Miller Act Payment on bond, 40 U.S.C. § 3133; (2) breach of contract; (3) account stated; and (4) quantum meruit. In October 2013, the parties stipulated to stay the proceedings pending resolution of McCarthy's appeal. In November 2014, the parties stipulated that the stay be lifted. Presently before the Court is Defendants' motion for stay of proceedings.

**DISCUSSION**

Section 11.1 of the subcontract between McCarthy and DVBE provides: "For any dispute involving the [VA], [DVBE] agrees to follow the disputes resolution procedures agreed to by the [sic] McCarthy and the [VA], including but not limited to those procedures set forth in FAR 52.233-1 DISPUTES (JUL 2002).  [DVBE] shall be bound by the result of any such dispute resolution procedure with the [VA] or others to the same degree as McCarthy."  Houghton Decl., Exh. A § 11.1.

Defendants argue that pursuant to Section 11.1 of the subcontract, DVBE agreed that if it had a claim involving the VA, it would be bound by the result of McCarthy resolving that claim with the VA.  According to Defendants, the outcome of DVBE's claim is entirely dependent on the outcome of McCarthy's pending claim against the VA, and this action should be stayed until McCarthy's claim is resolved.  DVBE, on the other hand, argues that Section 11.1 is in effect a waiver of its Miller Act claim.  According to DVBE, Section 11.1 does not meet the statutory requirements for such a waiver and therefore cannot be enforced.

The Miller Act provides that "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."  40 U.S.C. § 3133(b)(1).  An important purpose of the Miller Act "is to protect the general contractor and his surety, and to encourage and reassure the general contractor in the prompt payment of the subcontractor after 90 days have elapsed."  *United States for Use & Benefit of Miller & Bentley Equip. Co. v. Kelley*, 327 F.2d 590, 591 (9th Cir. 1964).

According to the dispute resolution procedures laid out in Section 11.1, only McCarthy and the VA may participate in the process.  *See* 48 C.F.R. § 52.233-1(c).  DVBE must wait for the VA and McCarthy to resolve their dispute, and then DVBE is bound by that result.  It is contrary to the intent of the Miller Act to require DVBE to await, and be bound by, the result of a process that it may not participate in.  In effect, this is a waiver of DVBE's Miller Act rights.

To be effective, a waiver of the Miller Act must be: "(1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c). "[T]he Miller Act does not permit [restructuring of a subcontract] to preclude a subcontractor from exercising its rights in accordance with the express terms of the Act in the absence of a 'clear and explicit' waiver of those rights." *United States for Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1209 (9th Cir. 2002).

Here, Section 11.1 is an invalid waiver of DVBE's Miller Act claim. First, because the subcontract was signed before the work began, Section 11.1 was not an effective waiver of the Miller Act under 40 U.S.C. § 3133(c). Second, Section 11.1 does not constitute a "clear and explicit" waiver of DVBE's rights under the Miller Act. The provision at issue here is similar to the provisions at issue in *Foundation Fence, Inc. v. Kiewit Pacific Co.*, No. 09CV2062 DMS JMA, 2010 WL 4024877 (S.D. Cal. Oct. 13, 2010), and *United States v. Zurich Am. Ins. Co.*, No. CIV.A. 14-4581, 2015 WL 1137053 (E.D. Pa. Mar. 13, 2015).

First, in *Foundation Fence,* the provision regarding disputes provided that the subcontractor agreed that if it had a claim involving the owner, it would be bound by the result of contractor resolving that claim with the owner:

> In the event of any request or claim by Subcontractor seeking additional time or compensation which arises out of or is related to the acts or omissions of the Owner, changes to or defects in the Prime Contract, or any other claim for which the Owner may have responsibility, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner, both by the terms of the Prime Contract and by any and all decisions or determinations made thereunder by the party, board or court as authorized in the Prime Contract for resolving such claims. In the event the Prime Contract contains a provision, hereinafter called a "Disputes" clause, specifying a procedure for resolving claims, then Contractor agrees to invoke, at Subcontractor's request, such Disputes clause on behalf of Subcontractor, and to allow Subcontractor to present such claims to Owner in Contractor's name . . . .  Subcontractor agrees to be bound by any final determination as rendered on its claim, whether pursuant to any such Disputes clause or otherwise, and Subcontractor shall in no event be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from Owner on account of Subcontractor's claims, less any markups or costs incurred by Contractor and to which Contractor is otherwise entitled, and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of such claims.

*Found. Fence, Inc.*, 2010 WL 4024877, at *3. There, the court found that this provision operated as an implied waiver of the subcontractor's Miller Act rights, and was therefore invalid. *Id*. at *3.

Second, in *Zurich American Insurance Company*, as here, the prime contract contained a disputes resolution clause incorporating the terms of the Contracts Disputes Act. *Zurich Am. Ins. Co.*, 2015 WL 1137053, at *2. The prime contractors argued that the disputes resolution clause required the subcontractor to wait until the resolution of the process under the Contract Disputes Act to resolve its claim. *Id*. For that reason, the prime contractors argued that the action should be dismissed or stayed pending resolution of the Contract Disputes Act process. *Id*. The court denied the stay, reasoning that the clause was inconsistent with the terms of the Miller Act. *Id*. at *6.

Section 11.1 of the subcontract is an invalid waiver of DVBE's Miller Act claim. Accordingly, it cannot be enforced.

## CONCLUSION

For the reasons stated above, Defendants' motion for stay of proceedings is denied.

**IT IS SO ORDERED.**

Dated: July 10, 2015

_____
HOWARD R. LLOYD
United States Magistrate Judge